# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SPECIAL COUNSEL EX REL. ROBERT CAMERON,<br>        Petitioner,<br><br>       v.<br><br>DEPARTMENT OF VETERANS<br>  AFFAIRS,<br>        Agency. | DOCKET NUMBER<br>CB-1208-19-0001-U-1<br><br><br>DATE: November 30, 2018 |

## THIS STAY ORDER IS NONPRECEDENTIAL[1]

Szuwei Co, Esquire, Oakland, California, for the petitioner.

Mark Romaneski, Esquire, Phoenix, Arizona, for the agency.

Steven R. Snortland, Esquire, Los Angeles, California, for the agency.

### BEFORE

Mark A. Robbins, Vice Chairman

### ORDER ON STAY REQUEST

¶1      Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay for 45 days the separation of Dr. Robert Cameron while OSC completes its investigation and legal review of the matter and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

determines whether to seek corrective action.  For the reasons discussed below, OSC's request is GRANTED.

## BACKGROUND

¶2      In its November 27, 2018 stay request, OSC alleges that it has reasonable grounds to believe that the agency decided to separate Dr. Cameron and coerced his retirement in reprisal for making protected disclosures under 5 U.S.C. § 2302(b)(8).  *Special Counsel ex rel. Robert Cameron v. Department of Veterans Affairs*, MSPB Docket No. CB-1208-19-0001-U-1, Stay Request File (SRF), Tab 1.  In support of its stay request, OSC alleges the facts in the following paragraphs.[2]  *Id.* at 7-23.

¶3      For over 20 years, the agency employed Dr. Cameron under 38 U.S.C. § 7405(a)(1) as a part-time thoracic surgeon at its Greater Los Angeles Healthcare System (GLA).  The agency rated his performance as "outstanding" for the past several years.  As part of his duties, Dr. Cameron performed thoracic surgeries, some of which required the insertion of a double-lumen endotracheal tube (DLT) by an anesthesiologist.  On September 6, 2017, and again on February 21, 2018, life-threatening medical complications arose during thoracic surgeries performed by Dr. Cameron that required the insertion of a DLT.  Dr. Cameron believed the complications were caused by either the mistakes or inexperience of the general anesthesiologists who inserted the DLTs.

¶4      As a result of the second life-threatening complication, on February 24, 2018, Dr. Cameron sent an email to GLA's Chief of Anesthesiology and copied his supervisor, among others.  In the email, he criticized GLA's practice of assigning inexperienced general anesthesiologists to thoracic surgeries as opposed to dedicated thoracic anesthesiologists and raised the September 6, 2017 and

---

[2] OSC's recitation of the facts is supported by the declaration of its counsel.  SRF, Tab 1, Attachment A.  For purposes of ruling on OSC's request for an initial stay in this ex parte proceeding, OSC's version of the facts is accepted as true.  *See, e.g.*, *Special Counsel v. Department of the Interior*, 62 M.S.P.R. 388, 390, 392 (1994).

February 21, 2018 surgeries, involving nearly fatal complications. He also asserted that the two incidents were "100% preventable" and "should be extremely rare." *Id.* at 12. He concluded that any case involving a DLT "is not managed acceptably with your current system" and that he could not "look our Veterans in the eye and tell them that they will be well cared for." *Id.* As a result, he made specific requests that he believed would ameliorate the problem.

¶5        Thereafter, on May 9, 2018, Dr. Cameron sent an email to the Deputy Director of the Surgical and Perioperative Careline and copied his supervisor, the Director. *Id.* at 18. He again raised his concerns regarding GLA's anesthesiology staffing problems and their effects on veterans' safety during thoracic surgical procedures. *Id.* at 19.

¶6        On June 22, 2018, Dr. Cameron's supervisor gave him a letter, informing him that his services were "no longer required" and that his separation would be effective July 7, 2018.[3] *Id.* at 22. In a follow-up email, his supervisor advised him that he could let the separation take effect or submit his retirement before the separation took place. Dr. Cameron asserts that he felt that he had no choice but to retire under these circumstances and, as a result, retired effective July 6, 2018. At the time of his separation, he was the only thoracic surgeon employed by GLA, and he had 27 patients awaiting surgical services. GLA continued to recruit a thoracic surgeon after his separation, including extending, until July 30, 2018, an existing vacancy announcement, which initially was intended for a second thoracic surgeon. *Id.* at 22-23.

## ANALYSIS

¶7        Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC may request that any member of the Merit Systems Protection Board order a stay of any personnel action for

---

[3] As an employee under 38 U.S.C. § 7405(a)(1), Dr. Cameron did not have a right to respond to or otherwise challenge his separation. SRF, Tab 1 at 26; *see* 38 U.S.C. § 714(h)(1)(B).

45 days if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice. Such a request shall be granted unless the Board member determines that, under the facts and circumstances involved, such a stay would not be appropriate. 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed. *See Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010).

¶8        To demonstrate a prima facie violation of 5 U.S.C. § 2302(b)(8), OSC must demonstrate the following facts: (1) the employee made a protected disclosure; (2) the official(s) who recommended or took the personnel action had actual or constructive knowledge of the protected disclosure; (3) a personnel action was threatened or taken; and (4) the protected disclosure was a contributing factor in the personnel action. *Id.*, ¶ 7. A disclosure is protected under 5 U.S.C. § 2302(b)(8) if the individual has a reasonable belief that the information being disclosed evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014). The standard for evaluating the reasonableness of the belief is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable to the employee could reasonably conclude that the actions of the Government evidence one of these types of wrongdoing. *Id*. In determining whether a disclosure evidenced a substantial and specific danger to public health or safety, it is relevant for the Board to consider factors such as the following: (1) the likelihood of harm resulting from the danger; (2) the imminence of the potential harm; and (3) the nature of the potential harm. *Chambers v. Department of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008).

¶9      Viewing the allegations in the light most favorable to OSC, there are reasonable grounds to believe that Dr. Cameron made disclosures protected under 5 U.S.C. § 2302(b)(8).  Specifically, OSC indicates that Dr. Cameron advised the GLA's Chief of Anesthesiology, his supervisor, and his supervisor's deputy, among others, that GLA's policy of assigning general anesthesiologists to complex thoracic surgeries placed GLA patients at risk of serious medical injury.  OSC further indicates that he used the two, life-threatening medical complications that occurred within the prior 6-month period as examples to show the likelihood and imminence of potential harm should general anesthesiologists continue to be assigned to complex thoracic surgeries.  OSC's assertions, if true, could lead one to conclude that Dr. Cameron reasonably believed that he was disclosing a substantial and specific danger to public health and safety.  *See Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶¶ 15-17 (2011) (finding a disclosure protected when the appellant reasonably believed that he disclosed systematic problems of untimely and inadequate patient care that were likely to result in severe harm).

¶10     OSC asserts that GLA's decision to separate him from Federal service and his resulting involuntary retirement are each covered personnel actions under the Whistleblower Protection Act (WPA).  Although Dr. Cameron retired prior to the effective date of his separation, an involuntary retirement is tantamount to a removal and, therefore, constitutes a "personnel action" under 5 U.S.C. § 2302(a)(2)(A)(iii).  *See Pariseau v. Department of the Air Force*, 113 M.S.P.R. 370, ¶ 11 (2010) (holding that an involuntary retirement is equivalent to a forced removal); *Cochran v. Department of Veterans Affairs*, 67 M.S.P.R. 167, 174 (1995) (finding that the Board had jurisdiction to review the removal of an agency physician appointed pursuant to title 38 in an individual right of action appeal).  Based on OSC's assertions in its stay request, it is within the range of rationality to believe that the decision to separate Dr. Cameron and his involuntary retirement constitute personnel actions under the WPA.

¶11      Finally, the contributing factor element may be established through the knowledge/timing test, i.e., that the official taking the personnel action knew of the protected activity and the personnel action occurred within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor. *See* 5 U.S.C. § 1221(e)(1); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015). OSC contends that the appellant's supervisor had actual knowledge of both of his disclosures, as he was a recipient of both emails. OSC also contends that Dr. Cameron's supervisor, his deputy, and GLA's Chief of Anesthesiology met at least once in late March or April 2018, to discuss the subject of his disclosures. OSC further contends that Dr. Cameron's supervisor admitted to OSC that he had conversations regarding the anesthesiology department's hostility toward Dr. Cameron as a result of his disclosures. The period of time between the appellant's first disclosure and the date his supervisor gave him the separation letter was approximately 4 months. Based on OSC's assertions in its stay request, it is within the range of rationality to believe that the knowledge/timing test has been met here. *See Mastrullo*, 123 M.S.P.R. 110, ¶ 21 (recognizing that a personnel action taken within approximately 1 to 2 years of an appellant's protected disclosures satisfies the knowledge/timing test).

¶12      Given the deference that generally should be afforded to OSC in the context of an initial stay request, and the assertions made in its stay request, there are reasonable grounds here to believe that the agency decided to separate and coerced the retirement of Dr. Cameron based on his protected disclosures in violation of 5 U.S.C. § 2302(b)(8). Although the effective date of Dr. Cameron's separation already has passed, the Board has authority to stay an action after its effective date. *See* 5 U.S.C. § 1214(b)(1)(A)(i); *Special Counsel v. Department of Transportation*, 59 M.S.P.R. 552, 555 (1993). The lapse of time that has passed since the effective date of the personnel action is a factor to be considered in determining whether to grant a stay. *See Special Counsel v. Department of*

*Transportation*, 59 M.S.P.R. at 555. Here, OSC asserts that it has been active in investigating and seeking corrective action in this matter during the approximate 6-month period since Dr. Cameron's separation from the agency. OSC additionally asserts that granting its request will allow it to investigate Dr. Cameron's complaint more fully while alleviating the economic and personal hardship that he has endured because of his loss of salary and benefits. Under these circumstances, it is appropriate to grant the requested stay. *See Special Counsel ex rel. Andersen v. Department of Justice*, 78 M.S.P.R. 675, ¶ 4 (1998) (stating that the purpose of a stay is to maintain the status quo ante and minimize the consequences of an alleged prohibited personnel practice while OSC and the agency involved resolve the disputed matter); *Special Counsel v. Department of the Navy*, 65 M.S.P.R. 346, 347 (1994) (holding that an initial stay is designed to provide OSC time to complete its investigation).

## ORDER

¶13      Based on the foregoing, granting OSC's stay request would be appropriate. Accordingly, a 45-day stay of Dr. Cameron's separation is GRANTED. The stay shall be in effect from November 30, 2018, through and including January 13, 2019. It is further ORDERED that:

(1)    During the pendency of this stay, Dr. Cameron shall be reinstated to the position he held prior to his separation;

(2)    The agency shall not affect any changes in Dr. Cameron's duties or responsibilities that are inconsistent with his salary or grade level, or impose upon him any requirement that is not required of other employees of comparable position, salary, or grade level;

(3)    Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(4)  Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B), as amended by Pub. L. No. 115-42,[4] and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board and the agency, together with any further evidentiary support, on or before December 31, 2018;[5] and

(5)  Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board on or before January 7, 2019.

FOR THE BOARD:                    _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.

---

[4] As passed by the House of Representatives on May 25, 2017, passed by the Senate on June 14, 2017, and signed into law on June 27, 2017.

[5] By regulation, any request for an extension of a stay must be received by the Board no later than 15 days before the expiration date of the stay, and any response by the agency must be received no later than 8 days prior to the expiration of the stay. 5 C.F.R. § 1201.136(b). Because these dates fall on Saturdays in both cases, OSC and the agency have until the following Mondays to submit their pleadings. 5 C.F.R. § 1201.23.